IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAYSON BENALLY,

      Plaintiff,

vs.                                                 No. 1:21-CV-00205-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Jayson Benally's Opposed Motion to Reverse and/or Remand (Doc. 24), dated November 12, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Benally is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Benally's motion on March 11, 2022 (Doc. 28), and Benally filed a reply brief on March 28, 2022 (Doc. 29). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Benally's motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. PROCEDURAL POSTURE

On June 12, 2019, Benally filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 227). Benally alleged that he had become disabled on August 1, 2017, due to deep vein thrombosis, bilateral ankle pain, severe bilateral knee pain,

post-traumatic stress disorder ("PTSD"), and bilateral shoulder issues. (*Id.* at 228-29). His application was denied at the initial level on October 15, 2019 (*id.* at 227), and at the reconsideration level on January 1, 2020 (*id.* at 244). Benally requested a hearing (*see id.* at 280-81), which ALJ Stephen Gontis conducted telephonically on May 27, 2020 (*see id.* at 167-208). Benally was represented by counsel and testified at the hearing (*id.* at 171-194, 207), as did a vocational expert (*id.* at 194-207).

On June 29, 2020, the ALJ issued his decision, finding that Benally was not disabled under the relevant sections of the Social Security Act. (*Id.* at 10-20). Benally requested that the Appeals Council review the ALJ's decision, but that body denied his request for review on January 21, 2021 (*see id.* at 1-3), making the ALJ's decision the final decision of the Commissioner. On March 9, 2021, Benally filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point,

the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Benally's claim pursuant to the five-step sequential evaluation process. (AR at 11-12). First, the ALJ found that Benally meets the insured status requirement through September 30, 2023, and had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 12-13). The ALJ then found at step two that Benally suffered from mild, nonsevere degenerative disc of the lumbar spine as well as the following severe impairments: dysfunction of the ankles, "degenerative disc disease of the bilateral knees,"[1] peripheral vascular disease, right shoulder impingement syndrome, and PTSD. (*Id.* at 13).

At step three, the ALJ concluded that Benally did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's

---

[1] Though not material to resolution of this motion, the Court presumes from its reading of the record that the ALJ intended to find that Benally suffered from degenerative *joint* disease of the bilateral knees. Whatever the proper assessment, the Court reads the ALJ's findings as referring to a severe impairment affecting the bilateral knees.

4

regulations. (*See id.* at 13-14). In doing so, the ALJ found that Benally possessed only moderate or mild limitations in the four broad areas of mental functioning, meaning that he did not satisfy the "paragraph B" criteria of § 12.15 (trauma- and stressor-related disorders) of Appendix 1, and that Benally did not satisfy the "paragraph C" criteria of that listing. (*See id.*).

Proceeding to the next step, the ALJ reviewed the evidence of record, including evidence from examining provider Ruth Monteith, Ph.D.; medical opinion evidence from Benally's treating physician's assistant; medical evidence from other treating, examining, and nonexamining medical sources; and Benally's own subjective symptom evidence. (*See id.* at 15-18). Based on his review of the evidence, the ALJ concluded that Benally possessed an RFC to perform sedentary work with additional exertional and nonexertional restrictions. (*See id.* at 14-15). The ALJ then determined that Benally was unable to perform any past relevant work, ending the step-four inquiry. (*Id.* at 18).

Moving to step five, the ALJ determined that Benally was able to perform jobs existing in significant numbers in the national economy. (*See id.* at 19-20). The ALJ therefore concluded that Benally's work was not precluded by his RFC and that he was not disabled. (*See id.* at 20).

## IV. DISCUSSION

Benally contends that the ALJ failed to properly consider medical opinions and objective medical evidence provided by Dr. Monteith, an examining source. (*See* Doc. 24 at 27-28); (Doc. 29 at 10-11). Benally also challenges concerning the ALJ's evaluation of medical opinion evidence from his treating physician's assistant (*see* Doc. 24 at 26-27), and he contends that the ALJ failed to adequately account for evidence concerning impairments of his lower extremities (*see id.* at 22-26). Because the Court concludes that remand is required as to the ALJ's evaluation of Dr. Monteith's evidence, and because the ALJ's proper handling of that evidence

may impact the other issues addressed in Benally's motion, the Court does not reach Benally's additional claims of error. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Dr. Monteith, a clinical psychologist, conducted a PTSD disability benefits questionnaire on behalf of the Department of Veterans Affairs (the "VA") on March 9, 2017. (*See* AR at 541-52). As part of this review, Dr. Monteith completed an initial section cataloguing Benally's diagnoses, assessing whether his symptoms could be differentiated among his diagnoses, and providing an opinion on Benally's occupational and social impairment. (*See id.* at 541-43). She also catalogued the results of testing performed on Benally, specifically a Beck Depression Inventory Second Edition (BDI-II) and a PTSD Checklist for DSM-5. (*See id.* at 551-52). Finally, Dr. Monteith recorded clinical findings that included a list of evidence reviewed, Benally's recent psychological history, a checklist of PTSD diagnostic criteria, a checklist of symptoms, a summary of behavioral observations, an opinion on Benally's competency to manage his financial affairs, and additional remarks elaborating on her review and findings. (*See id.* at 543-50). Benally contends that the ALJ improperly failed to consider Dr. Monteith's objective medical evidence and her opinions. (*See* Doc. 24 at 27-28). The Commissioner concedes that the ALJ did not discuss Dr. Monteith's review, but he argues that this omission is excusable because Dr. Monteith only summarized the evidence of record, because her evidence was cumulative, and because she did not provide a medical opinion. (*See* Doc. 28 at 19-22).

The standards outlining an ALJ's obligation to articulate his assessment of the evidentiary record are well established:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citations omitted). As a corollary of this rule, the ALJ may not "pick and choose" from among the record, "using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Nor may an ALJ "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)).[2] Failure to follow these controlling legal standards is grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Although the foregoing standards apply to all evidence considered by an ALJ, additional "articulation requirements" also apply when an ALJ evaluates the persuasive value of a medical opinion. *See* 20 C.F.R. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he considered each individual medical opinion; rather, the ALJ "will articulate how [he] considered the medical opinions ... from that medical source together in a single analysis." *Id.* § 404.1520c(b)(1). Second, while an ALJ must consider five factors when evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)-(5), he is generally only required to articulate his consideration of two of those factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision." *Id.* § 404.1520c(b)(2). Third, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [she] considered the other most persuasive factors ... for those medical opinions." *Id.* § 404.1520c(b)(3).

---

[2] The Court cites unpublished decisions of the Tenth Circuit and district court decisions for their persuasive value unless otherwise stated.

While the foregoing standards allow the ALJ some leeway in *how* he articulates his findings on the persuasive value of medical opinion evidence, the regulations provide no leeway as to *whether* an ALJ must articulate findings on each opinion in the record: "We **will** articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." *Id.* § 404.1520c(b) (emphasis added). In other words, while an ALJ generally "is not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009-10, the duty to address the persuasive value of *all* medical opinion evidence of record—at least at the source level—is mandatory. *See* 20 C.F.R. § 404.1520c(b).

The Commissioner argues that "Dr. Monteith did not offer a medical opinion" and, therefore, the ALJ was not required to follow the articulation requirements that apply to opinion evidence. (*See, e.g.*, Doc. 28 at 20). A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in particular abilities. 20 C.F.R. § 404.1513(a)(2). This is distinct from "objective medical evidence," which concerns "medical signs, laboratory findings, or both." *See id.* § 404.1513(a)(1). The Commissioner's position, in other words, is that Dr. Monteith did not offer a statement regarding what Benally can or cannot do despite his impairments. (*See* Doc. 28 at 20).

Elaborating on this, the Commissioner suggests that Dr. Monteith's report should be "construed as a VA decision" on disability, meaning that the ALJ was not required to defer to it. (*See id.* at 21). The SSA's recently revised regulations do provide that "a decision by any other governmental agency . . . about whether you are disabled . . . or entitled to any benefits is based on its rules," and as such "it is not binding on us and is not our decision about whether you are disabled . . . under our rules." 20 C.F.R. § 404.1504. For this reason, the ALJ was not required to

8

defer to Dr. Monteith's determination that, for example, Benally suffers from "[t]otal occupational . . . impairment."³ (AR at 543). But as the Commissioner acknowledges, this regulation does not relieve the ALJ of his obligation to "consider all of the supporting evidence underlying the other governmental agency . . . decision." 20 C.F.R. § 404.1504. To the extent that Dr. Monteith's records include objective medical evidence and/or medical opinions, the ALJ could not discount or ignore that evidence simply because it served to support another agency's disability decision.⁴

In evaluating whether Benally suffered from PTSD, Dr. Monteith observed that he exhibits "marked physiological reactions to internal or external cues" resembling an aspect of his trauma as well as "marked alterations in arousal and reactivity associated with the traumatic event(s)." (AR 547-48). Benally argues that these observations amounted to opinion evidence (*see* Doc. 24 at 28), while the Commissioner responds that the "checked boxes" associated with these statements merely "reflect a diagnosis under DSM-5 criteria" (*see* Doc. 28 at 20-21). With respect to these particular statements, the Court finds the Commissioner has the better of the argument. The statements in question do not describe "what [Benally] can still do despite [his] impairment(s)" or whether Benally suffers from work-related impairments or limitations, *see* 20 C.F.R. § 404.1513(a)(2), but instead amount to a list of clinical findings relevant to the nature and extent of Benally's PTSD diagnosis.

---

³ Dr. Monteith's finding of "total occupational impairment" would likely constitute a statement on an issue reserved to the Commissioner—and therefore neither valuable nor persuasive—even if not made as part of a VA disability determination. *See* 20 C.F.R. § 404.1520b(c)(3).

⁴ The Commissioner appears to argue that because the ALJ considered other records in the same AR exhibits that included Dr. Monteith's report, he necessarily "evaluated all of the underl[y]ing evidence" considered by Dr. Monteith. (*See* Doc. 28 at 21). The Court does not follow this line of reasoning, which seems to misread the relevant regulation. *See* 20 C.F.R. § 404.1504 ("[W]e will consider all of the supporting evidence *underlying the other governmental agency['s] . . . decision* that we receive as evidence in your claim.") (emphasis added). To the extent the Commissioner is implying that the ALJ was only required to consider the VA documents reviewed by Dr. Monteith when preparing her report, and that the ALJ could disregard any objective medical evidence and medical opinions provided by Dr. Monteith herself in that report, the Court does not read § 404.1504 so narrowly.

On the other hand, the Court finds that Dr. Monteith's report does contain medical opinion evidence addressing what Benally can and cannot do despite his impairments. For example, Dr. Monteith's "remarks" near the end of his evaluation state as follows:

> It has become increasingly difficult for [Benally] to engage in activities . . . . There are days when he simply cannot get himself to go to work, and there are days at work when he is taunted by his coworkers about his PTSD symptoms and about his absences from work, which makes it hard in turn for him to go to work the next day. Sometimes he is very angry at his coworkers, but he has not engaged in physical aggression despite his angry feelings. Quite simply, he harbors on the edge of losing his job . . . . His presentation is notable for worsened symptoms of PTSD and depression, with diminished ability to function at work, and in his personal life.

(AR at 550-51). Elsewhere, Dr. Monteith recorded in a completed checklist of "symptoms"[5] that Benally suffers from the following impairments and limitations:

> Impairment of short- and long-term memory, for example, retention of only highly learned material, while forgetting to complete tasks[;] . . .
>
> Difficulty in establishing and maintaining effective work and social relationships[;] [and] . . .
>
> Difficulty in adapting to stressful circumstances, including work or a worklike setting[.]

(*Id.* at 549).

Dr. Monteith's statements concerning the impact of Benally's PTSD symptoms on his abilities to, among other things, attend to work reliably and punctually and respond appropriately to co-workers in a work setting (*id.* at 550) are plainly opinions concerning Benally's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining

---

[5] Of course, "symptoms" as defined by the SSA do not amount to either objective medical evidence or medical opinion evidence, *see, e.g.*, 20 C.F.R. § 404.1502(g) (noting that "signs" do not include "your statements (symptoms)"), but instead refer only to a claimant's *own* description of his impairments, *see id.* § 404.1502(i). By contrast, the VA form completed by Dr. Monteith appears to define "symptoms" to include a medical source's conclusions and observations regarding limitations associated with an impairment. (*See* AR at 549) (list of "symptoms"). Since "[o]ther agencies apply different rules and standards than the SSA" when evaluating a claimant, the Court looks beyond the label used on the VA form and instead considers the substance of the findings provided therein. *Cf. Lovato v. Saul*, No. 20-cv-00055 JFR, 2021 WL 309016, at *5 (D.N.M. Jan. 29, 2021) (citation omitted) (considering prior version of § 404.1504; *cf. also* 20 C.F.R. § 404.1504 (observing that disability decision by another agency is not binding "under our rules" because that decision "is based on [the agency's own] rules").

concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting," *see* 20 C.F.R. § 404.1513(a)(2)(ii). The same is also true of Dr. Monteith's more generalized findings concerning the impact of Benally's PTSD on his abilities to remember and complete tasks at work, establish and maintain work relationships, and adapt to changes in a work or work-like setting. (*See* AR at 549), *see also* 20 C.F.R. § 404.1513(a)(2)(ii). In other words, these statements amount to medical opinion evidence, *see id.*, meaning that the ALJ was *required* to address their persuasive value pursuant to the articulation requirements of § 404.1520c(b).

      The ALJ also erred by failing to address probative objective medical evidence concerning Benally's limitations as recorded by Dr. Monteith in her report. To be sure, the Commissioner correctly argues (*see* Doc. 28 at 21) that certain findings, such as Dr. Monteith's diagnosis of PTSD, were cumulative of similar evidence of record that the ALJ neither ignored nor rejected. *Cf. Clifton*, 79 F.3d at 1010. Nevertheless, certain medical signs and laboratory findings recorded by Dr. Monteith are contrary to the evidence recorded by the ALJ and are probative to the issue of Benally's disability or nondisability. For example, while the ALJ repeatedly cited mental status examination (MSE) findings showing that Benally exhibited "normal mood and affect" (*see* AR at 14, 16, 17), Dr. Monteith's own MSE findings record Benally's mood as "depressed" and "I don't wanna be here," with his affect described as "labile with frequent weeping" (*id.* at 549). Elsewhere, Dr. Monteith recorded several times that Benally suffers from impaired memory except as to historical or "highly learned material" (*see id.* at 546, 549) and distorted cognition (*see id.* at 548), findings that are contrary to the ALJ's repeated observations that Benally's "memory and cognition are intact" (*see id.* at 13, 14, 16, 17). Dr. Monteith also observed that Benally exhibited slow and painful ambulation and slowed psychomotor activity

11

(*see id.* at 549), which appears contrary to the ALJ's determination that the record lacks evidence that Benally could "perform fine and gross movements effectively" (*see id.* at 13).

The aforementioned findings from Dr. Monteith amount to "signs"—that is, "anatomical, physiological, or psychological abnormalities that can be observed," including "abnormalities of behavior, mood, thought, memory, orientation, development, or perception" coupled with "observable facts that can be medically described and evaluated," *see* 20 C.F.R. § 404.1502(g)—as well as "laboratory findings" supported by clinically accepted psychological tests, *see id.* § 404.1502(c); (*see also* AR at 551) (noting "well established" validity and reliability of BDI-II testing). In other words, these findings constitute probative "objective medical evidence," 20 C.F.R. § 1513(a)(1), that the ALJ should have addressed before ignoring or rejecting it, *see Clifton*, 79 F.3d at 1009-10.

On remand, the ALJ will evaluate the persuasiveness of Dr. Monteith's medical opinions pursuant to the standards set forth in 20 C.F.R. § 404.1520c(b). Additionally, insofar as Dr. Monteith's evaluation contains objective medical evidence that the ALJ determines is due to be rejected, the ALJ will address that evidence and explain his reasoning for doing so.

## V.  CONCLUSION

The ALJ erred in his review of Benally's application for disability insurance benefits by failing to properly evaluate opinion evidence and other medical evidence from a medical source. Accordingly, Benally's Motion to Reverse and/or Remand (Doc. 24) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**